Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000572
20-JAN-2017
08:13 AM

NO. CAAP-15-0000572

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
JOEL LONZAGA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 14-1-0833)

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Joel Lonzaga (**Lonzaga**) appeals from the Judgment of Conviction and Sentence (**Judgment**) filed July 15, 2015, in the Circuit Court of the First Circuit (**Circuit Court**).[1] Following a jury trial, Lonzaga was convicted of Assault in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-710 (2014)[2] (**Count 1**), Promoting a Dangerous Drug in the

---

[1]    The Honorable Glenn J. Kim presided.

[2]    HRS § 707-710 provides:

   **§ 707-710 Assault in the first degree.** (1) A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person.
      (2) Assault in the first degree is a class B felony.

Third Degree, in violation of HRS § 712-1243 (2014)[3] (**Count 2**), and Unlawful Use of Drug Paraphernalia, in violation of HRS § 329-43.5(a) (2010)[4] (**Count 3**). Lonzaga was sentenced to concurrent five-year terms of imprisonment as to Counts 2 and 3, and a ten-year term of imprisonment as to Count 1, to be served consecutively to the terms imposed for Counts 2 and 3.

I.   BACKGROUND

On May 19, 2014, Plaintiff-Appellee the State of Hawai'i (**State**) filed a Complaint against Lonzaga for: Attempted Murder in the Second Degree in violation of HRS §§ 705-500 (2014), 707-701.5 (2014), and 706-656 (2014); Promoting a Dangerous Drug in the Third Degree; and Unlawful Use of Drug Paraphernalia (**Complaint**).

The case proceeded to trial on April 27, 2015. The State elicited testimony from Tracy Carroll (**Carroll**), Elizabeth Lonzaga (**Elizabeth**), Rocky Kahanu (**Kahanu**), Erica Garcia, M.D.

---

[3]   HRS § 712-1243 provides:

**§ 712-1243 Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
(2) Promoting a dangerous drug in the third degree is a class C felony.

[4]   HRS § 329-43.5(a) provides:

**§ 329-43.5 Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706-660 and, if appropriate as provided in section 706-641, fined pursuant to section 706-640.

(Dr. Garcia), Edi Schadwill (**Schadwill**), Honolulu Police Department (HPD) Officer Tuk Wright (**Officer Wright**), HPD Detective Dru Akagi (**Detective Akagi**), and Michael Pharaon, M.D. (**Dr. Pharaon**).

Carroll, the complainant, testified that he first met Lonzaga at a tavern in Kaneohe in April 2014. Carroll and Lonzaga would socialize, drink beer, and barbeque at Lonzaga's mother's house. On the day of the incident, May 7, 2014, Carroll testified that Lonzaga called and asked him to "come over and drink some beer . . . and talk." After Carroll arrived at the house, he drank two beers and observed Lonzaga drink one beer. Carroll related that he also smoked methamphetamine with Lonzaga. Carroll testified that as he was sitting in a chair on the side porch, he "saw a liquid coming over [his] baseball cap." Carroll was surprised that Lonzaga had poured gasoline on him. Carroll stated, "[w]hy are you fucking pouring gas on me, [Lonzaga]?" Carroll related that Lonzaga's mother came outside, and told him to leave because Lonzaga had a lighter in his hand. Carroll testified that he said "All right, [Lonzaga], I don't know what I did to you, but I'm leaving. I don't know what's going on." Lonzaga then reached around his mother, and set Carroll on fire. Carroll testified that Lonzaga's mother's face was the last thing he remembered before waking up at Straub Burn Center.

Elizabeth, Lonzaga's mother, also testified at trial. Elizabeth related that Carroll would come to her house to barbeque and drink beer. Elizabeth testified that she worked the

graveyard shift from 9:00 p.m. to 5:00 a.m. at Aloha Gas in Kaneohe. At about 6:00 p.m., as Elizabeth was attempting to sleep, she heard Carroll say, "[w]hy did you do that? Why did you throw gasoline all over me?" Prior to Carroll's statement, Elizabeth related that there was no argument between Lonzaga and Carroll. When Elizabeth heard the word "gasoline," she jumped out of bed, and ran towards the kitchen door. Once outside, Elizabeth saw Carroll "doused with gasoline." As Elizabeth was trying to direct Carroll towards the water hose, Lonzaga pushed her to the side and "flicked the lighter." Elizabeth testified that the lighter was "practically" on Carroll. Elizabeth related that after Lonzaga set Carroll on fire, "[Lonzaga] was just standing there." Elizabeth then screamed for her nephew, Ernie, to help her extinguish the fire. Elizabeth testified that

> Ernie came running down the stairs, pushed my
> son on the side. My son fell on the ground. And then
> I told Ernie to get the water hose ready and I told
> [Carroll] to drop and roll, drop and roll. While I
> was rolling his feet up and down, back and forth,
> Ernie was with the water hose from the top of his head
> to his feet back and forth, back and forth, until the
> fire went out.

After the fire was extinguished, Elizabeth observed Lonzaga "running down the street." Elizabeth related that her neighbors, the Kahanus, tried to "chase [Lonzaga] down[.]"

Kahanu testified that he lived across the street from Lonzaga. On May 7, 2014, at approximately 6:30 p.m., Kahanu heard screams coming from Lonzaga's house. Kahanu rushed over to Lonzaga's house, and observed "[Lonzaga] and his friend outside. And I seen a flame go on him and he's on fire." Kahanu testified that he observed Lonzaga run under the house, and towards an

agricultural farm. Kahanu and his brother (Grayson) chased Lonzaga into the farm area. Kahanu testified that Lonzaga "went as far as he could to the back, and then there's a stone wall there where you can't really go anywhere else." When Kahanu approached Lonzaga, Lonzaga pulled a knife. Kahanu testified that Lonzaga saw Grayson coming towards them, threw the knife on the ground, and started running. While chasing Lonzaga, Kahanu observed Lonzaga throw knives and a pipe on the ground. Kahanu related that Lonzaga continued to run in the direction of his house, and eventually jumped into a stream. Kahanu responded affirmatively when the Deputy Prosecuting Attorney (DPA) asked, "Did you tell the detective that [Lonzaga] told you that he was going to die anyway and the guy was trying to kill him?"

Schadwill testified at trial that Lonzaga was his neighbor. On May 7, 2014, at approximately 6:15 p.m., Schadwill was cleaning windows on a van in his driveway. Schadwill said he heard people arguing near Lonzaga's house. Schadwill walked towards Lonzaga's house, and observed "pushing between" Elizabeth and Carroll. Upon his arrival at Lonzaga's house, Schadwill saw a man on fire. Schadwill helped extinguish the fire by "patting the flames out." Schadwill testified that Lonzaga's mother asked "Why, why, why? Why did you do this[,]" and Lonzaga responded "He deserved it, and, I don't care."

Officer Wright testified that, on May 7, 2014, at approximately 6:40 p.m., he was dispatched to Anoi Street in Kaneohe to investigate an attempted murder case. Upon his arrival, Officer Wright observed a "bunch of people outside

pointing towards the canal near the residence." Officer Wright walked around the canal area, and observed a male, later identified as Lonzaga. Officer Wright testified that Lonzaga was yelling, "I had to do it. He was going to kill -- he was going to kill me and my family."

Detective Akagi testified that he interviewed Lonzaga on May 8, 2014 at 6:52 p.m. Detective Akagi related that the interview was recorded with a digital audio recorder. The State introduced a CD containing the audio recording of Detective Akagi's interview with Lonzaga. Detective Akagi testified that he listened to the audio recording, and related that it was "a fair and accurate representation of the actual interview [he] had with [Lonzaga.]"

The audio recording of Detective Akagi's interview was played to the jury. During the interview, Lonzaga stated that he was awake for four days prior to the day of the incident. On the day of the incident, Lonzaga related that he smoked a half gram of methamphetamine, and also drank beer and vodka. Lonzaga related that he discovered different names on Carroll's identification cards, and bank card. Lonzaga believed that Carroll was an undercover police officer, and that "Kailua people [were] coming after [him.]" Lonzaga admitted that he poured gasoline on Carroll. Lonzaga stated "[Carroll] was kind like shocked like what you doing? And I know what I doing. You know what you doing?" Lonzaga related that his mother told Carroll to leave the house. The following exchange took place:

[Detective Akagi:] So when you went grab 'em . . . with the
shirt, what were you thinking 'cause you had the lighter in
which hand?

[Lonzaga:] No, I never just light automatically light 'em
. . . I was thinking everything, you know.

. . . .

[Detective Akagi:] What you was thinking?

[Lonzaga:] You know, should I--should I do it or just, you
know what I mean? . . . He said well, I used to live in
Kailua before, you know what I mean? I said oh, I thought
you said you--you was from Montana? You came down three
months ago? You know what I mean, so all this never match
up. So I'm thinking they sending somebody illegal down here,
too, you know what I mean. So can, you know what I mean, go,
maybe, go back to your real name whatever it is. So I really
wanted for--I had a knife in my pocket. I really wanted for
kill him. I was going kill him. I was going kill him that
way.

Detective Akagi asked Lonzaga, "What did you want to
happen when you went light 'em . . . on fire?"  Lonzaga answered,
"it's not about what I wanted to happen . . . It's just more like
let me teach you one lesson. You don't . . . lie to me, you know
what I mean?"  When Detective Akagi asked Lonzaga if he was aware
that Carroll could have died from the fire, Lonzaga responded
affirmatively.  Later in the interview, Detective Akagi stated
"you know that when you light one large amount of gas, that . . .
[Carroll is] going to get hurt.  Good chance that he going die."
Lonzaga answered, "I don't think was that much that where he was
going die.  I don't think was going to die."  Detective Akagi
also asked if Lonzaga accidently set Carroll on fire, Lonzaga
replied that it "[w]asn't one accident."  Lonzaga related that he
knew what he was doing when he set Carroll on fire.  Lonzaga
stated that he ran from his house because he was "going [to] be
in jail forever[.]"

After the State rested its case, defense counsel read a stipulation to the jury regarding "items of personal property of Tracy Carroll that were contained within Tracy Carroll's clothing at the time he was being treated for injuries." The defense rested its case after reading the stipulation to the jury. Lonzaga did not testify.

On May 4, 2015, the jury returned a verdict finding Lonzaga guilty of the included offense of Assault in the First Degree as to Count 1, and guilty as charged in Counts 2 and 3. On July 15, 2015, Lonzaga was sentenced to concurrent five-year terms of imprisonment as to Counts 2 and 3, and a ten-year term of imprisonment as to Count 1, to be served consecutively to the term imposed for Counts 2 and 3.

On August 11, 2015, Lonzaga filed a notice of appeal.

II. POINTS OF ERROR

On appeal, Lonzaga argues that (1) the State presented insufficient evidence to convict him of Assault in the First Degree, and (2) the Circuit Court abused its discretion when it imposed consecutive sentencing.

III. APPLICABLE STANDARD OF REVIEW

The Hawai'i Supreme Court has long held that:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

> "Substantial evidence" as to every material element
> of the offense charged is credible evidence which is of
> sufficient quality and probative value to enable a person
> of reasonable caution to support a conclusion. And as
> trier of fact, the trial judge is free to make all
> reasonable and rational inferences under the facts in
> evidence, including circumstantial evidence.

State v. Matavale, 115 Hawai'i 149, 157-58, 166 P.3d 322, 330-31

(2007) (quoting State v. Batson, 73 Haw. 236, 248-49, 831 P.2d

924, 931 (1992)) (brackets omitted).

> A sentencing judge generally has broad discretion
> in imposing a sentence. The applicable standard of
> review for sentencing or resentencing matters is whether
> the court committed plain and manifest abuse of
> discretion in its decision. Factors which indicate a
> plain and manifest abuse of discretion are arbitrary or
> capricious action by the judge and a rigid refusal to
> consider the defendant's contentions. And, generally, to
> constitute an abuse it must appear that the court clearly
> exceeded the bounds of reason or disregarded rules or
> principles of law or practice to the substantial
> detriment of a party litigant.

State v. Pecpec, 127 Hawai'i 20, 32, 276 P.3d 589, 601 (2012)

(quoting State v. Rauch, 94 Hawai'i 315, 322, 13 P.3d 324, 331

(2000)).

IV.     DISCUSSION

A. Substantial Evidence

Lonzaga argues that the State presented insufficient

evidence to convict him of Assault in the First Degree "where he

only acted recklessly as to the degree of injury to Carroll."

The State contends that there was substantial evidence to support

a conviction for Assault in the First Degree because Lonzaga's

conduct and statements to bystanders and the police tended to

show that he acted intentionally or knowingly.

With regard to a defendant's state of mind, the supreme

court has recognized that:

> [I]t is not necessary for the prosecution to introduce
> direct evidence of a defendant's state of mind in order

to prove that the defendant acted intentionally, knowingly, or recklessly. Given the difficulty of proving the requisite state of mind by direct evidence in criminal cases, proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the defendant's conduct is sufficient. The mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances.

State v. Eastman, 81 Hawai'i 131, 140-41, 913 P.2d 57, 66-67 (1996) (citations omitted).

In order to convict Lonzaga of Assault in the First Degree, the State was required to present substantial evidence that he intentionally or knowingly[5] caused serious bodily injury[6]

---

[5]    HRS § 702-206 provides in relevant part:

**§ 702-206  Definitions of states of mind.**   (1) "Intentionally."
    (a)    A person acts intentionally with respect to his conduct when it is his conscious object to engage in such conduct.
    (b)    A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes or hopes that they exist.
    (c)    A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.
    (2)    "Knowingly."
    (a)    A person acts knowingly with respect to his conduct when he is aware that his conduct is of that nature
    (b)    A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.
    (c)    A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.
    (3)    "Recklessly."
    (a)    A person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature.
    (b)    A person acts recklessly with respect to attendant circumstances when he consciously disregards a substantial and unjustifiable risk that such circumstances exist.
    (c)    A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.
    (d)    A risk is substantial and unjustifiable within the meaning of this section if, considering the
(continued...)

to Carroll. HRS §§ 707-710, 702-206 (2014), 707-700 (2014). Lonzaga contends that his "statement and the rationale behind his actions" indicate that "he acted 'recklessly' at best with regard to causing 'serious bodily injury.'"

The State elicited the above-referenced testimony from Carroll, Elizabeth, Kahanu, Schadwill, HPD Officer Wright, and HPD Detective Akagi, as well as played the recording of Detective Akagi's interview with Lonzaga wherein Lonzaga admitted that he poured gasoline on Carroll. Lonzaga admitted that he did not automatically light Carroll on fire. When Detective Akagi asked if Lonzaga accidently set Carroll on fire, Lonzaga replied that it "[w]asn't one accident." Lonzaga related that he knew what he was doing when he set Carroll on fire. Lonzaga stated that he ran from his house because he was "going [to] be in jail forever[.]"

Based on the evidence presented, the jury could reasonably infer that Lonzaga was at least "aware that it is practically certain that his conduct" would cause serious bodily injury to Carroll. HRS §§ 702-206(2), 707-700. Viewing the evidence in the light most favorable to the prosecution, with the fact finder determining credibility, the State presented

---

[5](...continued)

> nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.

[6]      "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." HRS § 707-700.

substantial evidence that Lonzaga committed the offense of Assault in the First Degree. See State v. Agard, 113 Hawai'i 321, 324, 151 P.3d 802, 805 (2007); Matavale, 115 Hawai'i at 158, 166 P.3d at 331.

B. Consecutive Sentencing

Lonzaga contends that the Circuit Court erred when it imposed consecutive sentencing because the Circuit Court failed "to consider mitigating factors that weighed against a consecutive sentence." The State argues that the Circuit Court did not abuse its discretion because it considered the statutorily mandated factors, and was not required to "go through each factor on the record."

"A sentencing judge generally has broad discretion in imposing a sentence." Pecpec, 127 Hawai'i at 32, 276 P.3d at 601 (citation omitted). It is within the sentencing court's discretion to order multiple terms of imprisonment to run concurrently or consecutively. See HRS § 706-668.5(1) (Supp. 2015). Additionally, the court "in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706-606" (2014).[7]

---

[7]  HRS § 706-606 provides:

§ 706-606  Factors to be considered in imposing a sentence. The court, in determining the particular sentence to be imposed, shall consider:
  (1)   The nature and circumstances of the offense and the history and characteristics of the defendant;
  (2)   The need for the sentence imposed:
    (a)   To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
    (b)   To afford adequate deterrence to criminal conduct;

(continued...)

HRS § 706-668.5(2). "The weight to be given the factors set forth in HRS § 706-606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case." State v. Kong, 131 Hawai'i 94, 101, 315 P.3d 720, 727 (2013) (quoting State v. Akana, 10 Haw. App. 381, 386, 876 P.2d 1331, 1334 (1994)).

"Absent clear evidence to the contrary, it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706-606." Id., at 102, 315 P.3d at 728 (brackets omitted) (quoting State v. Hussein, 122 Hawai'i 495, 503, 229 P.3d 313, 321 (2010)). The supreme court has further held that "circuit courts must state on the record at the time of sentencing the reasons for imposing a consecutive sentence." Hussein, 122 Hawai'i at 510, 229 P.3d at 328; accord State v. Barrios, SCWC-13-0000118, 2016 WL 7422349 (Haw. Dec. 22, 2016).

At sentencing, the Circuit Court stated:

> All right. Mr. Lonzaga, I'm sure that you're sincere in the remorse you're talking about now, etcetera, mainly because I don't think you're insane or evil, and only an insane or evil person would have no remorse for what you did because what you did was horrific. There's no other way to put it. You set a man on fire.

---

[7](...continued)

    (c)    To protect the public from further crimes of the defendant; and

    (d)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3)    The kinds of sentences available; and

  (4)    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Now the reason that I'm seriously considering consecutive terms is what [the DPA] just enunciated and, ironically enough, it's also what your attorney kind of enunciated but in an exculpatory way. He's trying to, you know, say that it's so intertwined with the assault that I should make it all concurrent. It is inextricably intertwined with the assault. But I think, frankly, that's a reason for consecutive terms in this case. You yourself admit you were up for four straight days 'cause you were strung out on ice before this happened. Might not have happened if not for that. And that's illegal conduct that you were also found guilty of. Okay?

706-606 are the factors that I have to consider in terms of a sentence period and also in terms of whether I'm going to impose consecutive sentences or not.

I have to consider the nature and circumstances of the offense. And, again, the main offense in this case is absolutely horrific. The man is lucky to be alive, although I'm not sure he would look at it that way, given the fact that he's going to suffer for the rest of his life from these burns. And the restitution is almost -- is $700,000, and that's because he was in the hospital for so long, needed the kind of treatment he had because burns are such serious things. So I think the nature and circumstances of the offense, you know, warrant a consecutive term.

Also I have to look at the seriousness of the offense, the need for the sentence to promote respect for law and, to me, this is the singlemost important aspect, to provide just punishment for the offense. You know, [the DPA] said he's not doing it out of vindictiveness and I'm sure he's absolutely right about that. He's doing his job, and I feel like I've got to do my job too and I just do not feel that a 10-year prison sentence is enough in this case given all the facts that are in front of me.

Now I'm not going to give you 20. I'm going to give you 15 because the two drug offenses, I think, are just two sides of the same, the same coin. One is possession, one is drug paraphernalia. Those are going to run concurrent with the other, but they're going to run consecutive to the 10-year open term I'm giving you for the Assault One.

The Circuit Court's statements clearly indicate that in imposing consecutive sentences it considered: (1) the nature and circumstances of the offenses and history and characteristics of the defendant; and (2) the need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for law, and to provide just punishment for the offense. HRS § 706-606. The sentencing court is required to state on the record at

the time of sentencing the reasons for imposing a consecutive sentence in order to "(1) identify[] the facts or circumstances within the range of statutory factors that the court considered, and (2) confirm[] for the defendant, the victim, the public, and the appellate court that the decision was deliberate, rational, and fair." Kong, 131 Hawaiʻi at 102-03, 315 P.3d at 728-29 (citation omitted). We conclude that the Circuit Court's statements fulfilled this mandate.

On appeal, Lonzaga argues that the Circuit Court failed "to consider mitigating factors that weighed against a consecutive sentence." In support of his argument, Lonzaga asserts that: (1) he had no prior felony convictions; (2) his last misdemeanor criminal offenses occurred in 2010; (3) he graduated from high school; (4) he was employed as a painter, (5) he had strong family support; and (6) his "primary issue was his substance abuse of alcohol and methamphetamine." Lonzaga provides no clear evidence to rebut the presumption that the Circuit Court considered all factors under HRS § 706-606. See Kong, 131 Hawaiʻi at 102, 315 P.3d at 728. Moreover, this court has recognized that a sentencing court is not required to "specifically address certain facts in the record that may have weighed in [the defendant's] favor with respect to other HRS § 706-606 factors[.]" State v. Fetuao, No. CAAP-12-0001069, 2014 WL 812969, at *4 (Haw. App. Feb. 28, 2014) (SDO) (citing Kong, 131 Hawaiʻi at 102, 315 P.3d at 728); see also State v. Sinagoga, 81 Hawaiʻi 421, 428-29, 918 P.2d 228, 235 (App. 1996), overruled on other grounds by State v. Veikoso, 102 Hawaiʻi 219, 74 P.3d

575 (2003) ("The fact that a court does not orally address every factor stated in HRS § 706-606 at the time of sentencing does not mean the court failed to consider those factors. The statute contains no requirement that the court expressly recite its findings on the record for each of the factors set forth in HRS § 706-606."). In light of the broad discretion afforded to the sentencing court, we cannot conclude that the Circuit Court abused its discretion in imposing consecutive sentencing.

V.      CONCLUSION

For these reasons, the Circuit Court's July 15, 2015 Judgment is affirmed.

DATED: Honolulu, Hawai'i, January 20, 2017

On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.

Loren J. Thomas,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge